**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

Rose Colore LaRose,

Plaintiff,

v.

Equifax Information Services, LLC,

Defendant.

Case No.: ____________________

**JURY TRIAL DEMANDED**

**<u>COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT</u>**

## I. PRELIMINARY STATEMENT

1. This is an action for actual damages, statutory damages, punitive damages, and costs brought by Plaintiff Rose Colore LaRose ("Plaintiff" or "Ms. LaRose"), a consumer residing in Hyde Park, Massachusetts, against Equifax Information Services, LLC ("Equifax" or "Defendant"), a nationwide consumer reporting agency, for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA").

2. On or about May 14, 2026, Plaintiff requested and received her consumer file disclosure from Equifax bearing Confirmation Number 6134541867 ("the Disclosure"). That Disclosure is a fourteen (14)-page document riddled with blank data fields, missing payment history entries, and internal logical contradictions — well in excess of one hundred (100) blank or incomplete required data fields across four (4) active credit accounts.

3. Under 15 U.S.C. § 1681g(a)(1), Equifax was required to "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." Equifax failed to meet that obligation. The result is a disclosure so incomplete that Plaintiff cannot meaningfully evaluate the information maintained about her, compare it to her own records, or determine whether it is accurate.

4. Additionally, the Disclosure contains a materially misleading entry for a debt buyer account — Midland Credit Management, Account *7856 — in which the stated Date of First Delinquency (05/06/2023) predates the Date Opened (12/19/2023) by over seven months. This constitutes an internal logical impossibility and a materially misleading inaccuracy under 15 U.S.C. § 1681e(b).

5. Plaintiff brings this action to vindicate her statutory right to a complete and accurate consumer file disclosure, to be compensated for the frustration, emotional distress, and time expended attempting to decipher an incomplete and misleading report, and to deter Equifax's ongoing willful disregard of its FCRA obligations.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1681p (FCRA jurisdiction) and 28 U.S.C. § 1331 (federal question).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District, and Plaintiff resides in Hyde Park, Massachusetts, which is within the District of Massachusetts.

8. Equifax regularly transacts business in this District by disseminating consumer reports and consumer file disclosures to and regarding residents of the Commonwealth of Massachusetts.

## III. PARTIES

9. Plaintiff Rose Colore LaRose is a natural person residing at 193 West Street, Hyde Park, Massachusetts 02136. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Defendant Equifax Information Services, LLC is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax's registered agent for service of process in Georgia is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

11. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) and a "nationwide consumer reporting agency" as defined by 15 U.S.C. § 1681a(p). Equifax regularly engages in the practice of assembling, evaluating, and disseminating

consumer credit information for monetary fees using means of interstate commerce, including the internet and mail. Equifax is fully aware of its obligations under the FCRA.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's May 14, 2026 Consumer File Disclosure

12. On or about May 14, 2026, Plaintiff requested her consumer file disclosure from Equifax. Equifax provided its response under Confirmation Number 6134541867 ("the Disclosure"). The Disclosure is attached hereto as Exhibit A.

13. Section 1681g(a)(1) of the FCRA requires that upon a consumer's request, a consumer reporting agency "shall . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1) (emphasis added).

14. The term "file" is defined in 15 U.S.C. § 1681a(g) as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

15. The Federal Trade Commission has held that a consumer reporting agency that systematically withholds information from consumer disclosures does not comply with Section 609 because it fails to provide a "clear" and "accurate" disclosure of all information in the file. FTC Advisory Opinion to Darcy, June 30, 2000 ("Darcy Opinion"), attached hereto as Exhibit B. This opinion has been publicly available for over twenty-five (25) years. Equifax is charged with constructive notice of the Darcy Opinion and the disclosure standard it embodies. The principle articulated in the Darcy Opinion applies with equal force to blank payment fields, missing payment dates, and absent

activity designators — all of which are categories of "information in the consumer's file" that Equifax systematically withholds from consumer-facing disclosures.

16. Under the standard articulated in Alexander v. Equifax Info. Servs., LLC, No. 2:17-cv-01236, 2018 WL 3025939 (D. Nev. June 18, 2018), a file disclosure is deficient under § 1681g(a)(1) when it is "unclear such that the consumer cannot determine the accuracy of the information in that disclosure."

17. On information and belief, when Equifax sells consumer reports to third parties regarding Plaintiff, Equifax includes complete account data — including actual payment amounts, payment dates, full balance histories, and activity designators — the same data it systematically withholds from Plaintiff's own consumer file disclosure. The fact that Equifax can and does include this data in commercial reports demonstrates both its presence in Equifax's internal files and Equifax's technical ability to include it in consumer disclosures. See Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir. 2007).

**B. Account-by-Account Inventory of Missing and Blank Data Fields**

18. An itemized inventory of every blank, missing, or incomplete data field in the Disclosure is attached hereto as Exhibit C. The following paragraphs summarize the most significant omissions by account.

**1. Midland Credit Management — Account No. *7856 (Debt Buyer Account, Closed)**

19. The Midland Credit Management trade line (Account *7856) appears on page 4 of the Disclosure. It carries a reported balance of $611.00, an Amount Past Due of $611.00, a Date of First Delinquency of 05/06/2023, and a Date Opened of 12/19/2023.

20. The Disclosure contains the following blank or missing account-level data fields for Account *7856: Scheduled Payment Amount (blank); Terms Frequency (blank); Date of Last Activity (blank); Date Closed (blank); Activity Designator (blank); Charge Off Amount (blank); Deferred Payment Start Date (blank); Balloon Payment Amount (blank); Balloon Payment Date (blank); and Term Duration (blank). Ten (10) account-level fields are missing.

21. The 24-Month Balance History table for Account *7856 contains twenty-two (22) consecutive months of rows spanning July 2024 through April 2026. In every single row — all twenty-two (22) rows — the "Actual Payment Amount," "Scheduled Payment Amount," "Last Payment Date," and "Credit Limit" fields are entirely blank and contain no data whatsoever. The balance is listed as a static $611.00 in every row with zero variation and zero payment activity recorded, despite this being an actively maintained collection account.

22. The total count of blank fields for Account *7856 in the 24-Month History table alone equals eighty-eight (88) blank cells (22 rows x 4 blank fields per row), plus the ten (10) account-level blank fields, for a subtotal of ninety-eight (98) blank or missing required data fields on this account alone.

**2. Capital One Bank USA NA — Account No. *8202 (Credit Card, Open)**

23. The Capital One Bank USA NA trade line (Account *8202) appears on page 5 of the Disclosure. It carries a reported balance of $209.00 with a Credit Limit of $500.00 and a status of 30-59 Days Past Due. The account was opened January 3, 2026.

24. The Disclosure contains the following blank or missing account-level data fields for Account *8202: Actual Payment Amount at account header (blank); Date of Last Activity

(blank); Activity Designator (blank); Date Closed (blank); and Term Duration (blank). Five (5) account-level fields are missing.

25. The 24-Month Balance History table for Account *8202 contains two (2) rows. In both rows (02/26 and 03/26), the "Actual Payment Amount" field and the "Last Payment Date" field are entirely blank. The payment history grid for this account shows no payment notation for January 2026, April 2026, and May 2026 — months within the account's active history — leaving multiple cells reflecting No Data rather than a verified payment status code.

**3. Santander Consumer USA — Account No. *1000 (Auto Loan, Charged Off, Closed)**

26. The Santander Consumer USA trade line (Account *1000) appears on page 6 of the Disclosure. It carries a reported balance of $1,263.00, a Charge Off Amount of $1,263.00, and a status of Charge Off. The account was opened August 29, 2019, with a Date of First Delinquency of 09/27/2025, and a last payment date of 11/22/2025.

27. The Disclosure contains the following blank or missing account-level data fields for Account *1000: Scheduled Payment Amount at account header (blank); Date of Last Activity (blank); Activity Designator (blank); Date Closed (blank); Deferred Payment Start Date (blank); Balloon Payment Amount (blank); and Balloon Payment Date (blank). Seven (7) account-level fields are missing.

28. The 24-Month Balance History table for Account *1000 contains twenty-two (22) rows. In five (5) of those rows — specifically the rows for 01/26, 12/25, 09/25, 02/25, and 01/25 — the "Actual Payment Amount" field is entirely blank despite the corresponding "Scheduled Payment Amount" field listing $708.00. Plaintiff is therefore unable to

determine from the Disclosure whether any actual payment was received by Santander Consumer USA in those five months.

**4. Carrington Mortgage Services — Account No. *9174 (FHA Real Estate Mortgage, Open)**

29. The Carrington Mortgage Services trade line (Account *9174) appears on page 7 of the Disclosure. It carries a reported balance of $158,109.00 with a High Credit of $279,800.00 and a status of 30-59 Days Past Due. The account was opened December 26, 2008 and is designated under Narrative Code 298 as a loan modified under a federal government plan.

30. The Disclosure contains the following blank or missing account-level data fields for Account *9174: Date of Last Activity (blank); Activity Designator (blank); Date Closed (blank); Deferred Payment Start Date (blank); Balloon Payment Amount (blank); and Balloon Payment Date (blank). Six (6) account-level fields are missing. Additionally, the account is reported with a Term Duration of "37 Years" — which, when combined with the December 2008 origination date, produces a payoff date of approximately December 2045. However, the account is flagged as modified under a federal government plan (Code 298) without any disclosure of the modification date or revised term, making the reported term duration incomplete and potentially misleading.

31. The 24-Month Balance History table for Account *9174 contains at least two (2) rows — specifically the rows for 07/24 and 12/24 — in which the "Actual Payment Amount" field is entirely blank despite a Scheduled Payment Amount being listed for adjacent months.

**C. Aggregate Count of Missing Fields**

32. As detailed in the attached Exhibit C, Plaintiff's consumer file disclosure contains in excess of one hundred (100) blank, missing, or incomplete required data fields across the

four (4) primary credit accounts, when including all 24-Month History table blank fields. Even excluding the 24-Month History table and counting only account-level header fields, there are in excess of thirty (30) blank required fields. This total does not include the two collection entries (Credit Collections, Account *9684 and *8939), which contain no payment history data of any kind.

33. The uniform, systematic nature of these omissions — blank Actual Payment Amount fields appearing identically across multiple accounts, blank Activity Designators across every account, blank Last Activity Dates appearing throughout — confirms that these are not random errors attributable to individual data furnishers. Rather, they reflect a deliberate, policy-driven decision by Equifax to withhold specific categories of data from its consumer-facing disclosure template.

**D. Materially Misleading Entry — Midland Credit Management (Account *7856)**

34. As alleged in Paragraphs 19-22 above, the Midland Credit Management account (Account *7856) reports a Date of 1st Delinquency of 05/06/2023 while simultaneously reporting a Date Opened of 12/19/2023. No account — debt buyer or otherwise — can experience a first delinquency more than seven (7) months before the account was created. This internally contradictory entry is materially misleading as to Plaintiff's actual credit history.

35. On information and belief, the Date of 1st Delinquency reflects the delinquency date on the original account that was subsequently purchased by Midland Credit Management. However, the Disclosure does not identify the original creditor or original account in connection with the Midland entry. The omission of the original creditor identity, combined with the internally contradictory dates, creates a materially misleading picture

of Plaintiff's credit history and deprives her of information necessary to investigate and verify the entry.

**E. Dissemination to Third Parties and Article III Standing**

36. Plaintiff's Disclosure reflects the following hard inquiry — a credit file pull that constitutes confirmed, actual dissemination of information from Plaintiff's consumer file to a third-party creditor: Capital One Bank USA NA, hard inquiry dated January 3, 2026.

37. On January 3, 2026, Defendant transmitted Plaintiff's consumer report — containing the inaccuracies and omissions described herein — to Capital One Bank USA NA, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure. Under TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208-09 (2021), Plaintiff has suffered a concrete, particularized injury-in-fact because the incomplete and misleading information described herein was actually disseminated to at least one third party. Plaintiff's standing is not contingent on adverse action; the actual dissemination of an incomplete or inaccurate file is itself the cognizable injury.

38. Each such third-party dissemination constitutes a separate and independent statutory violation for purposes of calculating statutory damages under 15 U.S.C. § 1681n(a)(1)(A).

**F. Actual Damages**

39. As a proximate result of Equifax's violations described herein, Plaintiff has suffered actual damages including: (a) significant frustration and emotional distress in attempting to understand, verify, and act upon an incomplete disclosure; (b) wasted time and effort expended attempting to reconcile the missing data against her own records; (c) inability to confirm the accuracy of the negative information being reported about her to third-

party creditors; and (d) harm to her creditworthiness and ability to dispute inaccurate information caused by the materially misleading Midland Credit Management entry described above.

**G. Equifax's Willful Conduct**

40. Equifax's violations of 15 U.S.C. §§ 1681g(a)(1) and 1681e(b) were willful within the meaning of 15 U.S.C. § 1681n and Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 57 (2007), because Equifax's conduct was objectively unreasonable under a reading of the FCRA that carries "an unjustifiably high risk of violating the statute."

41. Notice Factor 1 — FTC Darcy Opinion (25+ Years of Express Regulatory Notice): The FTC Advisory Opinion to Darcy (June 30, 2000), attached hereto as Exhibit B, has been publicly available and cited in litigation for over twenty-five (25) years. It unambiguously states that a CRA that systematically withholds information from consumer disclosures fails to comply with Section 609. Equifax's continued operation of a disclosure template that omits payment amounts, payment dates, and activity designators across every account in a consumer's file — despite a quarter century of express FTC notice — is objectively unreasonable under Safeco, 551 U.S. at 70.

42. Notice Factor 2 — Systemic Uniform Pattern Confirming Deliberate Policy: The identical nature of the omissions across all four (4) credit accounts in Plaintiff's Disclosure — every account missing Actual Payment Amount entries in the history table, every account missing the Activity Designator field, every account missing the Date of Last Activity field — confirms that this is not a one-time data furnisher error or random system glitch. This is a deliberate, template-level policy decision by Equifax to present consumers with an information-impoverished version of their own file. A systemic,

uniform pattern of omission across all accounts on a single report is strong circumstantial evidence of willful disregard rather than inadvertent negligence.

43. Notice Factor 3 — Longstanding Awareness and Failure to Correct: The identical categories of omissions alleged herein — blank payment history amounts, missing account data fields, and truncated consumer-facing disclosures — have been the subject of prior litigation and regulatory attention for years. Equifax's knowing failure to correct these systemic defects after being put on notice through repeated litigation demonstrates willful rather than negligent noncompliance. See Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735, 746 (11th Cir. 2020) (upholding punitive damages award in FCRA case).

44. Notice Factor 4 — Per Se Data Integrity Failure: The internal contradiction between the Date of First Delinquency (05/06/2023) and the Date Opened (12/19/2023) on the Midland Credit Management account (Account *7856) is a machine-detectable error that any minimally adequate data-validation system would flag and reject before publishing a consumer report. The absence of any such basic automated integrity check — comparing two data fields on the same account entry — is objectively unreasonable. Any compliance-oriented data-quality system would identify and correct this inconsistency before disseminating the report to third parties.

## V. CAUSES OF ACTION

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681g(a)(1)

## Failure to Clearly and Accurately Disclose All File Information

45. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully stated herein.

46. 15 U.S.C. § 1681g(a)(1) requires that upon a consumer's request, a consumer reporting agency shall "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request."

47. The Disclosure Equifax provided to Plaintiff on May 14, 2026 omits in excess of one hundred (100) required data fields across four (4) credit accounts, including but not limited to: (a) all Actual Payment Amount fields across twenty-two (22) rows in the Midland Credit Management 24-Month History table (Account *7856); (b) all Actual Payment Amount and Last Payment Date fields in both rows of the Capital One Bank USA NA 24-Month History table (Account *8202); (c) five (5) Actual Payment Amount fields in the Santander Consumer USA 24-Month History table (Account *1000), specifically the rows for 01/26, 12/25, 09/25, 02/25, and 01/25; (d) two (2) Actual Payment Amount fields in the Carrington Mortgage Services 24-Month History table (Account *9174), specifically the rows for 07/24 and 12/24; (e) the Activity Designator field across all four (4) credit accounts; (f) the Date of Last Activity field across all four (4) credit accounts; (g) the Date Closed field across all four (4) credit accounts; and (h) additional account detail fields as enumerated in Exhibit C.

48. Because Plaintiff cannot determine from the Disclosure what payments were actually made or received on her accounts, whether her accounts were properly closed, or what activity designator status applies to each account, the Disclosure is "unclear such that the consumer cannot determine the accuracy of the information in that disclosure." Alexander v. Equifax Info. Servs., LLC, 2018 WL 3025939, at *5 (D. Nev. 2018).

49. Equifax's failure to include this information in the Disclosure while retaining and transmitting it to third-party purchasers of consumer reports constitutes a failure to "clearly and accurately" disclose "all information" in Plaintiff's file, in violation of 15 U.S.C. § 1681g(a)(1). See Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir. 2007).

50. Equifax's violation was willful as alleged in Section IV.G above. Plaintiff is therefore entitled to recover: (1) the greater of actual damages or statutory damages of not less than $100.00 nor more than $1,000.00 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); (2) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (3) costs pursuant to 15 U.S.C. § 1681n(a)(3). In the alternative, if Equifax's conduct is found to be negligent, Plaintiff is entitled to recover actual damages and costs pursuant to 15 U.S.C. § 1681o. See also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pro se pleadings entitled to liberal construction).

## COUNT II

## VIOLATION OF 15 U.S.C. § 1681e(b)

### Materially Misleading Reporting — Midland Credit Management (Account *7856)

51. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully stated herein.

52. 15 U.S.C. § 1681e(b) requires every consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

53. The Midland Credit Management trade line (Account *7856) as reported in Plaintiff's Disclosure is materially inaccurate and misleading: it reports a Date of 1st Delinquency of 05/06/2023 while simultaneously reporting a Date Opened of 12/19/2023. A first delinquency cannot predate the opening of the account by more than seven (7) months. This internal contradiction is a logical impossibility that cannot reflect the accurate state of Plaintiff's credit history.

54. Furthermore, the Disclosure does not identify the original creditor on whose account the 05/06/2023 delinquency date was generated, even though Midland Credit Management is identified as a debt buyer. The omission of the original creditor identity, combined with the internally contradictory dates, creates a materially misleading picture of Plaintiff's credit history. See Pittman v. Experian Information Solutions, Inc., 901 F.3d 619, 629 (6th Cir. 2018) (a credit entry is materially misleading under § 1681e(b) when it creates a materially false impression of a consumer's credit history that could adversely affect her credit opportunities); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009) (information may be inaccurate under § 1681e(b) if it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions).

55. Reasonable procedures to assure maximum possible accuracy under § 1681e(b) would include a basic data integrity validation to ensure that the Date of First Delinquency does not predate the Date Opened on any account. The failure to implement any such check — or to flag and correct this obvious internal contradiction before disseminating the report to third parties — demonstrates a failure to follow reasonable procedures.

56. This materially misleading entry was actually disseminated to Capital One Bank USA NA on January 3, 2026 — the confirmed hard inquiry on record — establishing that

Equifax transmitted this inaccurate entry to a third-party creditor. Plaintiff therefore has Article III standing to pursue this count under TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).

57. Equifax's violation of § 1681e(b) was willful as alleged in Section IV.G above, because the internal contradiction between Date of 1st Delinquency and Date Opened is a visible, machine-detectable error that reasonable data validation procedures would have identified and corrected. Plaintiff is therefore entitled to recover: (1) the greater of actual damages or statutory damages of not less than $100.00 nor more than $1,000.00 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A); (2) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (3) costs pursuant to 15 U.S.C. § 1681n(a)(3). In the alternative, if Equifax's conduct is found to be negligent, Plaintiff is entitled to recover actual damages and costs pursuant to 15 U.S.C. § 1681o.

## VI. PRAYER FOR RELIEF

58. WHEREFORE, Plaintiff Rose Colore LaRose respectfully prays that this Court enter judgment against Defendant Equifax Information Services, LLC as follows:

A. Judgment for Plaintiff on each and every Count in this Complaint;

B. Actual damages in an amount to be proven at trial, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

C. Statutory damages of not less than $100.00 nor more than $1,000.00 per willful violation, with each third-party dissemination of Plaintiff's consumer file constituting a separate and independent statutory violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

D. Punitive damages in an amount this Court deems just and proper to deter Equifax's ongoing willful disregard of its FCRA obligations, pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Injunctive relief ordering Equifax to provide Plaintiff with a complete and accurate consumer file disclosure as required by 15 U.S.C. § 1681g(a)(1), including all information in her file as of the date of the order, without truncation, suppression, or systematic omission of any data field; and

G. Plaintiff reserves the right to amend this Complaint pursuant to FRCP Rule 15(a) to add reinvestigation counts under 15 U.S.C. § 1681i following expiration of the CRA's 30-day reinvestigation window; and

H. Such other and further relief as this Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

59. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

Rose Larose

Rose LaRose

Pro Se Plaintiff

193 West Street

Hyde Park, Massachusetts 02136

A_laurie.larose@yahoo.com

Dated: 5-30-26